604 A.2d 1177

**DRESSER INDUSTRIES, INC., Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 20, 1991.

Decided March 2, 1992.

116

John P. Krill, Jr., Kirkpatrick & Lockhart, Harrisburg, Pa., for petitioner.

Michael J. Heilman, Asst. Counsel, for respondent.

Before CRAIG, President Judge, KELLEY, J., and LORD, Senior Judge.

LORD, Senior Judge.

■ This case involves the unusual situation where the defendant, a Commonwealth agency, the Department of Environmental Resources (DER), which is given the statutory responsibility for all aspects of protection of the Commonwealth's environmental and natural resources, is sued in this Court as a landowner for violating the very act it is charged with enforcing and wherein it is specifically alleged that DER permitted acid drainage from the land which DER owns to be discharged into the waters of the Commonwealth. DER has filed preliminary objections to this suit and contends:

1. It is immune from suit by virtue of the doctrine of sovereign immunity.

2. The Commonwealth Court lacks subject matter jurisdiction.

3. The plaintiff Dresser lacks capacity to sue.

4. This suit is barred by a prior pending action before the Environmental Hearing Board.

To these preliminary objections Dresser Industries (Dresser) has filed its own preliminary objections. Initially, we recognize that, for the purpose of deciding preliminary objections, we consider all the well-pleaded facts and reasonable inferences therefrom but not the conclusions of law. *Guinn v. Alburtis Fire Company,* 134 Pa. Common-

wealth Ct. 270, 577 A.2d 971 (1990). The facts as gleaned from the complaint are as follows.

In 1963, the Commonwealth acquired a 575–acre tract of land known as the Smith Mine Site in Stewart Township, Fayette County. The land is still owned by the Commonwealth, and the care of the site has been committed to DER's Bureau of State Parks. It is the lower part of Ohiopyle State Park. Before and after the acquisition of the land by the Commonwealth, it was subject to certain mining leases and Harbison–Walker, a division of Dresser, operated under such leases from 1954 to 1972. On the land there exists and has existed since 1963 certain acid water seeps which are draining into the waters of the Commonwealth. These seeps have been divided into Group A, B and C seeps. Dresser has voluntarily collected and neutralized the acidity in the A seep but has not treated the B and C seeps. On June 6, 1991, Harbison–Walker received an order from DER requiring it to abate the drainage from A, B, and C seeps and to reclaim certain areas. A timely notice of appeal to the Environmental Hearing Board from that order has been filed.

Dresser brings this suit in three counts. Count I is brought against DER to abate a nuisance under section 601(a) of The Clean Streams Law,[1] 35 P.S. § 691.601(a).

Count II is brought under section 601(c) of The Clean Streams Law, 35 P.S. § 691.601(c), seeking to compel DER to abide by the law and a declaration that DER as a landowner is liable for the acid drainage from Groups B and C and for at least 87% of the acid seep in Group A.

Count III is brought under Article I, Section 27 of the Pennsylvania Constitution and seeks essentially the same relief as Count II. Under all three counts, Dresser seeks to recover expenses and attorney's fees and costs.

■ We first address Dresser's objections to DER's preliminary objections. In these objections, Dresser asserts

1. Act of June 22, 1937, P.L.1987, *as amended,* 35 P.S. §§ 691.1–691.1001.

that DER improperly pled sovereign immunity as a preliminary objection and not as an affirmative defense. Pa. R.C.P. 1030.

We have allowed immunity to be raised by a preliminary objection in the nature of a demurrer where the defense is clear on the face of the pleadings. *Wurth by Wurth v. City of Philadelphia,* 136 Pa.Commonwealth Ct. 629, 584 A.2d 403 (1990); See also *Ziccardi v. School District of Philadelphia,* 91 Pa.Commonwealth Ct. 595, 498 A.2d 452 (1985).

We conclude here that the defense has been made apparent in both the averments of the complaint, *Ziccardi,* and DER's objections. Moreover, Dresser asserts no prejudice or otherwise establishes how it will be harmed by disposition of this preliminary objection at this stage. Since both parties have already extensively briefed the immunity issue, we see no benefit to dismissing DER's preliminary objections and requiring DER to recast them as new matter in an answer.

■ Having determined that we will overrule Dresser's preliminary objections, we turn to the Commonwealth's preliminary objections and address the Commonwealth's first argument that it is immune from suit because of the doctrine of sovereign immunity.

DER reasons that it is immune from suit because this is a suit in *negligence* and only those suits specifically authorized by Section 8522(b) of the Judicial Code, 42 Pa.C.S. § 8522(b), are allowed. Since this suit does not fall within those exceptions, DER maintains Dresser's action is barred by the principles of sovereign immunity embodied in the Judicial Code. This reasoning is fallacious because it is bottomed on a false premise. The cause of action asserted here is not a suit for negligence but is a claim made under The Clean Streams Law. Such causes of action do not depend for their validity on negligence or fault.

In the seminal case of *National Wood Preservers Inc. v. Department of Environmental Resources,* 35 Pa.Common-

wealth Ct. 443, 387 A.2d 142 (1978), *judgment aff'd in part, reversed in part,* 489 Pa. 221, 414 A.2d 37 (1980), *appeal dismissed,* 449 U.S. 803, 101 S.Ct. 48, 66 L.Ed.2d 7 (1980), this Court and the Supreme Court upheld Section 316 of The Clean Streams Law [2] against a constitutional challenge that it imposed liability on a landowner absent a showing of fault or responsibility for causing the polluting condition. The Supreme Court said that "the validity of an exercise of police power over land depends little upon the owner or occupier's responsibility for causing the condition giving rise to the regulation." *Id.,* 489 Pa. at 238, 414 A.2d at 45.

Thus, the court upheld that provision of the act which provides in its relevant part

"whenever the [Department of Environmental Resources] finds that pollution or danger of pollution is resulting from a condition which exists on land in the Commonwealth the [Department] may order the landowner or occupier to correct the condition in a manner satisfactory to the [Department]...."

and imposes responsibility regardless of fault. See also *Commonwealth v. Barnes & Tucker,* 455 Pa. 392, 319 A.2d 871 (1974).

We turn first to The Clean Streams Law itself to determine whether it clearly authorizes suit against DER to compel it to comply, like any other landowner, with its requirements. Several portions of the Clean Steams Act are pertinent to our inquiry.

Section 601(a) provides "Any activity or condition declared by this act to be a nuisance or which is otherwise in violation of this act, shall be abatable in the manner provided by law or equity for the abatement of public nuisances." 35 P.S. § 691.601(a).

Section 601(c) states that "any person having an interest which is or may be adversely affected may commence a civil action on his own behalf to compel compliance with this act ... against the department where there is alleged a failure

2.   35 P.S. § 691.316.

of the department to perform any act which is not discretionary ... or ... against any other person alleged to be in violation of any provision of this act...." 35 P.S. § 691.-601(c).

The act thus provides two means of enforcement and we are obliged to analyze the statute to determine whether any proceeding may be brought against the Commonwealth or governmental agency to compel it, as a landowner, to comply with the Clean Streams Act.

Of course, it makes good sense from the point of environmental necessity and from the Legislature's objective when it enacted The Clean Streams Law to treat the Commonwealth and all its agencies like any other landowner.

In addition, we think it particularly pertinent to this discussion to quote extensively from *National Wood Preservers:*

> Our reading of Section 316 is indeed entirely in harmony with, and fully in accord with, the legislature's objective, see 1 Pa.C.S.A. § 1921(c), as expressly set forth in Section 4 of the Act, 35 P.S. § 691.4:
>
> "(1) Clean, unpolluted streams are absolutely essential if Pennsylvania is to attract new manufacturing industries and to develop Pennsylvania's full share of the tourist industry;
>
> (2) Clean, unpolluted water is absolutely essential if Pennsylvanians are to have adequate out of door recreational facilities in the decades ahead;
>
> (3) It is the objective of the Clean Streams Law not only to prevent further pollution of the waters of the Commonwealth, but also to reclaim and restore to a clean, unpolluted condition every stream in Pennsylvania that is presently polluted;
>
> .    .    .    .    .
>
> From this "Declaration of Policy," enacted in 1970 along with the portion of Section 316 relevant here, it is clear that the Legislature seeks to eliminate all water pollution, not only water pollution emanating from mines, and to

"reclaim and restore" every polluted stream. Thus any contrary or narrower reading of Section 316 would fundamentally undermine the efforts of DER to achieve these legislative objectives, as well as frustrate the Legislature's fulfillment of its obligation under Article I, section 27 of the Pennsylvania Constitution:

"The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people."

*Id.*, 489 Pa. at 228–229, 414 A.2d at 40–41.

But these obvious reasons are not enough for this Court to conclude that DER does not have immunity in this suit. There must be some words in the act itself which expressly show that the Legislature intended to waive sovereign immunity. Such words *are* found in The Clean Streams Law. As we have demonstrated above in Section 601(c), the act gives any "person" the right to institute an action against *"any person* alleged to be in violation of any provisions of this act."

A reference to the definition portion of the act, 35 P.S. § 691.1, evinces a clear intent on the part of the legislature to include the defendant DER within the definition of "person". This section states:

"Person" shall be construed to include any natural person, partnership, association or corporation or *any agency, instrumentality or entity of* Federal or *State Government.*

(emphasis added).

DER is clearly an "agency of state government" and, under the terms of the act, a "person" who can be sued.[3]

---

**3.** The history of the definition of "person" in the act is also revealing. Prior to the amendment of 1980, the definition of "person" in the act did not include agencies of the state government. The sovereign immunity statute was enacted in 1978 and the 1980 amendment to

■ DER also makes with some force the argument that immunity must be *specifically* waived by the legislature. 1 Pa.C.S. § 2310. We certainly recognize this established principle, but such waiver is not confined to the specific words "immunity is waived" and certainly includes words which permit a cause of action against a person, as does Section 601(c), and then includes in the definition of "person" all agencies of the Commonwealth.

■ We are obliged in construing a statute to give effect to all its words, and DER has not supplied any reasonable explanation why the definition of "person" in the act was changed to include an "agency of the state". Instead, DER implicitly asks us to ignore the change because it does not constitute a waiver of immunity. We refuse to ignore the change in definition and conclude that this change, in conjunction with the words in the statute which give a cause of action against a person, is a clear and specific waiver of immunity, is in accord with the purposes of the statute and comports with the legislative intent. We therefore conclude that Dresser's suit is not barred by sovereign immunity.

■ DER's second argument is that this Court lacks jurisdiction over the subject matter of this petition because, if Dresser's complaint is actionable at all, the Clean Streams Law confers exclusive jurisdiction over it on the courts of common pleas.

As noted, Count II of Dresser's complaint is brought under Section 601(c). This section, after providing for the cause of action, further provides: "any other provision of the law to the contrary notwithstanding, *the courts of common pleas shall have jurisdiction* of such actions, and venue in such actions shall be as set forth in the Rules of Civil Procedure concerning actions in assumpsit." (emphasis added).

The Clean Streams Law broadened the act to include state agencies. This demonstrates an obvious legislative intent to permit suits of this sort against a landowning state agency.

This Court has previously held that this language modifies and creates an exception to Section 761 of the Judicial Code, 42 Pa.C.S. § 761, governing the original jurisdiction of the Commonwealth Court. We accordingly transferred a case brought under Section 601(c), together with the remaining preliminary objections, to the common pleas court. *Erie County League of Women Voters v. Department of Environmental Resources,* 106 Pa.Commonwealth Ct. 369, 525 A.2d 1290 (1987).

Nonetheless, Dresser urges on this Court the argument that the language of Section 601(c) granting jurisdiction to the common pleas court was intended to confer concurrent jurisdiction to that court and the Commonwealth Court. However, such a holding would require a rejection of our holding in *Erie County League of Women Voters,* which we are not wont to do.[4]

Dresser also argues that this Court has jurisdiction because Count I of the complaint, brought under Section 601(a) to abate a nuisance, is clearly within our jurisdiction, and therefore this Court has a right to retain jurisdiction of Count II under our ancillary jurisdiction. This argument, of course, is correct. *Erie County League.* Section 601(a) provides "that [s]uch proceedings may be prosecuted in the Commonwealth Court, or in the court of common pleas of the county where the activity has taken place, the condition exists, or the public is affected...." In *Erie County League,* having dismissed the two counts of a complaint brought in our original jurisdiction, we transferred the case to the common pleas court. We recognized there that had "either of those counts remained actionable, we could properly retain jurisdiction over [the remaining count] as well since it was part of the action as a whole and would permit the parties to obtain a comprehensive disposition of the matter in a single proceeding. *Id.,* 106 Pa.Commonwealth Ct. at 375, 525 A.2d at 1293 (citation omitted).

4. *Erie* states "we believe the limits of our jurisdiction require the transfer be made." *Id.,* 106 Pa.Commonwealth Ct. at 375, 525 A.2d at 1293.

In sum, this court has original jurisdiction of the matter conferred by virtue of Section 601(a) (Count I) and ancillary jurisdiction of the 601(c) action (Count II) under the authority of Section 761 of the Judicial Code.

Section 601(a), however, confers jurisdiction concurrently on the Commonwealth Court and the common pleas court. Thus, we conclude that the Commonwealth Court would have the option, in our discretion, to transfer the entire case to the Common Pleas Court of Fayette County or retain jurisdiction of the entire matter.

Before deciding whether to retain or transfer this case, however, several other matters should be pointed out from the allegations in the complaint. DER, it is alleged, was aware of the untreated B and C discharges from 1972 to 1983. Thereafter, DER filed three orders against Harbison–Walker,[5] each of which was withdrawn after an appeal was taken. Finally, on June 6, 1991, DER issued an order requiring Harbison–Walker to abate the drainage on the A, B and C seeps and to reclaim certain areas. This order is presently on appeal to the Environmental Hearing Board.

Because of this other proceeding, DER has raised two additional objections to the Commonwealth Court jurisdiction. We shall address these arguments, as well as DER's contention that Dresser lacks standing, *seriatim*.

First, the argument that Dresser has failed to exhaust its administrative remedies fails at the outset to address the precise issue in this case. That issue is whether Dresser can obtain relief against DER as a landowner administratively. We recognize that the Environmental Hearing Board ordinarily has jurisdiction over environmental compliance and that the Board has the expertise in that area. But we know of no statute or rule which would permit Dresser to bring any action before the EHB to force

5. Those orders were filed on June 21, 1983, September 2, 1988 and October 31, 1988.

DER to clean up acid seepage on the land that DER owns.[6] We therefore reject this argument.

■ DER makes this same argument in support of its position that this court has no jurisdiction to grant declaratory judgment and cites *Burnham Coal Company v. PBS. Coals, Inc.*, 65 Pa.Commonwealth Ct. 86, 442 A.2d 3, *aff'd.*, 499 Pa. 59, 451 A.2d 443 (1982). Again, DER ignores the important distinction we have made throughout this case between DER *as regulator* and DER *as landowner.* In *Burnham,* the dispute was between two private parties, a permittee of a mine site and PBS Coals, who had allegedly contracted to assume certain obligations. This Court, in dismissing the petition, held that DER was not an indispensable party to that suit and therefore this court had no jurisdiction. That case is not the case where DER is a landowner and obviously a necessary party and a government agency. Moreover, there is no authority granted to the Environmental Hearing Board in this case which would divest this Court of jurisdiction under the Declaratory Judgments Act.[7]

■ Second, DER argues that Dresser has not given the appropriate notices. It maintains that lack of the statutorily required notice is a jurisdictional defect. While that may be so, the only notice required of Dresser in this case is found in Section 601(e)—that is, "notice of the violation"

6. Section 4(a) of the Environmental Hearing Board Act, Act of July 13, 1988, P.L. 530 (EHB Act), 35 P.S. § 7514(a), states that the EHB "has the power and duty to hold hearings and issue adjudications ... on orders, permits, licenses or decisions *of the department* [DER]." (emphasis added.) There is no provision in the EHB Act which allows the EHB to consider actions commenced against DER.

7. The Declaratory Judgments Act, 42 Pa.C.S. §§ 7531–7541 (DJA). Section 7541 of the DJA states that its purpose is remedial and that "the remedy provided by this subchapter shall be additional and cumulative to all other available remedies ..." except in three enumerated circumstances. The only pertinent exception is that raised by DER in its preliminary objections and supporting brief. That exception, found at 42 Pa.C.S. § 7541(c)(2), precludes declaratory judgment when the relief to be granted is committed to "the exclusive jurisdiction of a tribunal other than a court." As noted, the EHB does *not* have jurisdiction to grant the relief Dresser seeks against DER.

and not notice of intent to sue. There are ample allegations in the complaint that such notice was provided. Although DER cites Section 601(a), notice to the Attorney General of intent to bring suit under that section is obviously applicable only to suits in his name. Since Dresser brings this suit in its own right under, *inter alia*, a public nuisance theory, the appropriate notice was provided.

DER also contends that Dresser has no standing because it is not adversely affected. However, the words of the statute that we must interpret provide that standing is given to anyone who is or *"may be"* adversely affected, 35 P.S. § 691.601(c). While a plausible argument can be made that Dresser is not yet adversely affected, there is no doubt that Dresser *"may be* adversely affected" if it is finally ordered to remedy the entire seepage problem without any recourse against DER, the landowner. This argument is therefore also rejected.

Finally, DER makes the related argument that Dresser has no standing as a private party to abate a nuisance because it has no interest to distinguish it from the general public. *Pennsylvania Society for the Prevention of Cruelty to Animals v. Bravo Enterprises*, 428 Pa. 350, 237 A.2d 342 (1968). This argument also fails because certainly Dresser's connection with the land separates it from the general public and gives it, at this stage of the proceedings, the interest necessary to abate a public nuisance.

### *Conclusion*

As we have mentioned above, there is presently an appeal pending before the EHB from an order requiring Dresser to remedy the situation in the A, B and C acid seepage sites. In that proceeding, the principal issue is apparently whether the order against Dresser's subsidiary, Harbison–Walker, is valid and enforceable.

In this case, the principal issue is whether DER as a landowner must remedy the situation. Because these is-

sues, though not the same, are obviously intertwined and will presumptively involve much of the same evidence, and because any appeal from the EHB in the matter before it will be to this Court, we will retain jurisdiction and not transfer this case to the Court of Common Pleas of Fayette County. We overrule DER's preliminary objections, order DER to file an answer, and stay all proceedings in this action pending further order of this Court so that the proceedings before the EHB may proceed expeditiously and so that the parties will not be required to undergo a duplication of testimony on deposition or otherwise.

In light of our discretionary decision to stay this matter pending the action before the EHB, we will hold that our overruling of the preliminary objections relating to the availability of remedies Dresser seeks is done without prejudice to DER to reassert its challenge to those remedies. After the decision of the EHB is rendered,[8] this court will be in a position to rule on the appropriate remedies.

## ORDER

AND NOW, this 2nd day of March, 1992, it is hereby ORDERED:

(1) that the preliminary objections of petitioner Dresser Industries, Inc. are overruled;

(2) that the preliminary objections of respondent DER are overruled and that respondent DER's preliminary objections seeking the dismissal of all of the petitioner's claims for monetary damages are overruled without prejudice to seek said relief again at a later stage of these proceedings; and

(3) that the respondent shall file an answer to the petition in the abovecaptioned matter within thirty (30) days of the date of this Order.

8. At that time, Dresser may withdraw certain prayers for relief or, indeed, the entire action. On the other hand, if DER fails to establish Dresser's ultimate responsibility for the entire clean-up, it would be surprising if DER did not voluntarily initiate a program to "clean its own house."

(4) that all further proceedings in the above-captioned matter are stayed pending further order of this Court.