**PFG GAS, INC., Petitioner,**

v.

**COMMONWEALTH of Pennsylvania and Department of Environmental Protection of the Commonwealth of Pennsylvania, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 1999.

Decided Nov. 4, 1999.

---

Bonnie Allyn Barnett, Allentown, for petitioner.

Martin R. Siegel, Harrisburg, for respondent.

Before COLINS, J., FRIEDMAN, J., and JIULIANTE, Senior Judge.

COLINS, Judge.

Before the Court are preliminary objections to PFG Gas's amended complaint, which seeks to recover costs under the Hazardous Sites Cleanup Act.[1]

This case arises out of the environmental contamination at the Broadhead Creek Superfund Site in the Borough of Stroudsburg, Monroe County. The facts as averred in the amended complaint are as follows. PFG Gas is successor in interest to Union Gas Company (UGC), whose corporate predecessors operated a coal gasification plant along the Broadhead Creek that generated coal tar.[2] UGC's predecessor disposed of the coal tar at the Superfund Site, resulting in contamination of the soil, surface water, and ground water. In 1960, UGC's predecessor granted the Borough of Stroudsburg a permanent easement across the land adjacent to the creek, and in 1980, the Borough conveyed title to the easement to the Commonwealth, which has since that time exercised exclusive control over the area.

In 1957, the Department of Environmental Protection (DEP) undertook a flood control project for the creek that entailed rechanneling the creek. PFG avers that at no time before or after undertaking the flood control project did DEP investigate the possibility of contamination of the site. The project rerouted the creek over a gravel seam containing coal tar, and over time the water cut into the seam releasing coal tar into the creek. The flood control project also allegedly changed the elevation of the creek, causing the hydraulic gradient of the ground water to be tilted toward the creek, and causing coal tar to migrate into the creek. In 1980, in the course of rehabilitating the flood control project, DEP's workmen using a backhoe uncovered free-flowing coal tar, releasing it into the environment.

In March 1981, DEP reported the coal tar release to the United States Environmental Protection Agency, which in 1982 placed the site on the National Priorities List pursuant to the Comprehensive Environmental Response Compensation Liabili-

---

1. Act of October 18, 1988, P.L. 756, *as amended*, 35 P.S. §§ 6020.101–6020.1305.

2. The plant operated from approximately 1890 through the mid–1940s.

ty Act (CERCLA).[3] Beginning in 1982 and continuing to the present date, UGC and PP & L, an adjacent property owner, have undertaken "response actions" to remediate the contamination. In 1992, in separate suits brought by UGC and PP & L against the Commonwealth, a federal district court held the Commonwealth liable for response costs as an "owner and operator" of the site.[4] In the UGC suit, the Commonwealth was ordered to pay 25 percent of UGC's past response costs.

PFG's amended complaint states claims against the Commonwealth under the HSCA, alleging that the Commonwealth is strictly liable for response costs and that it is liable to PFG for reimbursement and/or contribution. PFG also requests declaratory judgment that the Commonwealth is liable for a portion of the response costs incurred, and to be incurred, by PFG and for interest, costs, expenses, and attorney's fees.

The Commonwealth raises the following preliminary objections to the amended complaint: 1) the General Assembly has not waived sovereign immunity under the HSCA because the Commonwealth is not a "person," a "responsible person," or an "owner or operator" within the meaning of the HSCA; rather, the HSCA explicitly states that sovereign immunity is not waived; and 2) the HSCA does not authorize action by a private party against the Commonwealth.

More specifically, PFG raises its claim for reimbursement of response costs and/or contribution under Sections 507, 701, 702, and 1101 of the HSCA, 35 P.S. §§ 6020.507, 6020.701, 6020.702, and 6020.1101. Section 507(a) states,

> A responsible person under section 701 or a person who causes a release or threat of a release of hazardous substance or causes a public nuisance under this act or causes a release or a substan-

tial threat of release of a contaminant ... shall be liable for the response costs and for damages to natural resources. The department, a Commonwealth agency, or a municipality which undertakes to abate a public nuisance under this act or take a response action may recover those response costs and natural resources damages in an action in equity brought before a court of competent jurisdiction.

35 P.S. § 6020.507(a). Section 701(a)(1) of the HSCA states in pertinent part,

> a person shall be responsible for a release or threatened release of a hazardous substance from a site when ... [t]he person owns or operates the site ... when a hazardous substance is located in or on the site, but before it is released; or ... during the time of the release or threatened release.

35 P.S. § 6020.701(a)(1). "A person who is responsible for a release or threatened release of a hazardous substance from a site as specified in section 701 is strictly liable for ... response costs and damages which result from the release or threatened release or to which the release or threatened release significantly contributes...." Section 702(a) of the HSCA, 35 P.S. § 6020.702(a).

> A release of a hazardous substance or a violation of any provision, regulation, order or response approved by the department under this act shall constitute a public nuisance. Any person allowing such a release or committing such a violation shall be liable for the response costs caused by the release or the violation.

Section 1101 of the HSCA, 35 P.S. § 6020.1101.

**Sovereign Immunity**

■ Under the Pennsylvania Constitution, the Commonwealth and its officials

---

**3.** 42 U.S.C. §§ 9601–9675.

**4.** *United States v. Union Gas Company,* 35 Env't Rep. Cas. (BNA) 1750 (E.D.Pa.1992);

and *Penna. Power & Light Company v. Commonwealth,* 39 Env't Rep. Cas. (BNA) 1886, 1994 WL 623758 (E.D.Pa.1994).

and employees acting within the scope of their duties are immune from suit except when the General Assembly specifically waives immunity. Pa. Const. art. I, § 11.[5] In this suit brought under the HSCA, the question is whether the HSCA specifically waives sovereign immunity. This is an issue of first impression.[6]

The HSCA imposes liability on a "person" or "responsible person" who owns or operates the site in question. The HSCA defines "person" as "[a]n individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, authority, interstate body or other legal entity which is recognized by law as the subject of rights and duties. The term includes the Federal Government, state governments and political subdivisions." Section 103 of the HSCA, 35 P.S. § 6020.103. The Commonwealth argues that "state governments" does not refer to the Commonwealth; that if the General Assembly had meant to include the Commonwealth it would have referred to it as "the Commonwealth" as it did elsewhere in the statute.

In *Dresser Industries,* we addressed a similar claim of sovereign immunity under the law popularly known as the Clean Streams Law,[7] which authorizes suit against any "person" alleged to be in violation of that act. Section 601(c) of the Clean Streams Law, 35 P.S. § 691.601(c). That act defines "person" to be "any natural person, partnership, association or corporation or any agency, instrumentality or entity of the Federal or State Government." We concluded that that definition included the Department of Environmental Resources, which as an agency of state

government was a person who could be sued under that act.

The HSCA's definition of "person" is very similar to the definition of "person" we analyzed in *Dresser Industries.* To paraphrase, a waiver of immunity is not confined to the specific words "immunity is waived"; it certainly includes words that permit a cause of action against a person, and then includes "state governments" in the definition of "person." *Dresser Industries,* 604 A.2d at 1182. Although the Clean Streams Law states clearly that the definition includes an agency of the "State Government" and the HSCA definition states more indirectly that it includes "state governments," the analysis is the same, and to conclude otherwise would be to conclude that the General Assembly meant that the Commonwealth and its agencies would be liable under the Clean Streams Law for contamination of the waters of the Commonwealth, but not liable under the HSCA for contamination caused by the release of hazardous substances into the soil and water at the site along the Broadhead Creek. Furthermore, the plain meaning of the definition's use of the words "state governments" includes the Commonwealth.

The Commonwealth also argues that Section 511(b) of the HSCA specifically exempts the Commonwealth from liability. This argument is without merit. When read in its entirety, Section 511 deals with the acquisition of property where such acquisition is deemed necessary in order to evaluate and eliminate a release of hazardous substances. It states,

> (a) **General rule.**—The department may acquire, ... real property or an interest in real property that the depart-

**5.** In 42 Pa.C.S. §§ 8521–8528, the General Assembly waives sovereign immunity in nine enumerated instances that involve negligent acts. PFG does not allege a claim in negligence.

**6.** PFG cites the federal district court opinion, *Reading Company v. City of Philadelphia,* 829 F.Supp. 127 (E.D.Pa.1993), which decides the present issue. While the district court opinion is not binding precedent in state courts, it offers guidance in that it follows our decision in *Dresser Industries, Inc. v. Department of Environmental Resources,* 146 Pa.Cmwlth. 114, 604 A.2d 1177 (1992), in arriving at its conclusion.

**7.** Act of June 22, 1937, P.L.1987, *as amended,* 35 P.S. §§ 691.1–691.1001.

ment, in its discretion, determines is needed to conduct a response action under this act. The department has no duty to acquire any interest in real property under this act.

(b) **Sovereign immunity.**—The Commonwealth shall not be liable under this act as a result of acquiring an interest in real estate under this section, nor shall anything in this act be construed as a waiver of sovereign immunity or a waiver under 42 Pa.C.S. § 8522 (relating to exceptions to sovereign immunity).

On this point we find compelling the reasoning of the district court in the *Reading Company* case. In that case, the Southeastern Pennsylvania Transportation Authority (SEPTA) argued that Section 511(b) specifically preserves sovereign immunity with respect to any type of claim under the HSCA. Using that section's heading, "Acquisition of real property," as an aid in its construction,[8] the district court concluded that this subsection preserves sovereign immunity, to the extent that it is not waived under 42 Pa.C.S. § 8522, only in the context of the acquisition of real property under subsection (a). *Reading Company*, 829 F.Supp. at 131. In rejecting SEPTA's arguments, the district court reasoned that in a number of contexts, the HSCA specifically preserves sovereign immunity and that these provisions would make no sense absent a general waiver. *Id.* at 130.

### Action by a Private Party

■ In its complaint PFG Gas seeks reimbursement of costs and/or contribution from the Commonwealth under Section 705(a) of the HSCA, 35 P.S. § 6020.705(a), which states, "A person may seek contribution from a responsible person under section 701 during or following a

civil action under section 507 or 1101." As described in Section 701(a), a responsible person includes the person owns or operates the site while the hazardous substance is present or when it is released. 35 P.S. § 6020.701(a). The HSCA defines "owner or operator" as "[a] person who owns or operates or has owned or operated a site, or otherwise controlled activities at a site."[9] Section 103 of the HSCA, 35 P.S. § 6020.103.

The Commonwealth argues that it is not within the HSCA's definition of "owner or operator"; that the nature of its activities at the site and its status as holder of an easement do not equate with liability as an "owner or operator" under the HSCA. By the plain language of the act, the Commonwealth is and was an owner or operator of the Broadhead Creek site. We agree with the district court in *United States v. Union Gas Company*, which concluded that the Commonwealth was an owner or operator under CERCLA by virtue of its exclusive control and authority over the development and construction over the flood control project. The Court noted that the Commonwealth owns the streambed of the creek, which is navigable waterway, and it was also an operator of the site by virtue of its having rechanneled the water in 1960, its having repaired the levee in 1980, and its having exercised exclusive control over the area and having inspected it annually since 1980 when it took title to the easement. 35 Env't Rep. Cas. at 1750. The district court's analysis is consistent with the terms of the HSCA's definitions of "owner or operator" and "responsible person," and we adopt it as our reasoning.

Finally, the Commonwealth argues that the HSCA does not authorize a private right action against the Commonwealth. It argues that Section 507 authorizes cost

---

8. *See* 1. Pa.C.S. § 1924.

9. The definition excludes, among others, "a person who, without participating in the management of a site, holds indicia of ownership primarily to protect a security interest in the site"; a unit of State or local government that acquired ownership or control involuntarily; and a financial institution, parent or affiliate of a financial institution, or corporate instrumentality of the federal government that acquired the site by foreclosure or by enforcing a mortgage or security interest under certain circumstances. Section 103 of the HSCA, 35 P.S. § 6020.103.

recovery actions only by the department or by a Commonwealth agency or municipality,[10] and that Sections 701 and 702 merely describe responsible persons and the scope of their liability. We do not disagree with the Commonwealth on these points; however, the HSCA does permit PFG to seek contribution from the Commonwealth as responsible person.

We decline the Commonwealth's invitation to adopt the reasoning of the dissent in *FMC Corporation v. United States Department of Commerce*, 29 F.3d 833 (3d Cir.1994), in support of its argument that the Commonwealth's exercise of its police powers related to its flood control activities at the site does not make it liable as an operator of the site. The majority in *FMC Corporation* declined to carve out a regulatory exception to liability under CERCLA, holding that "the relevant sovereign immunity question ... is not whether the government was acting in a regulatory capacity, but whether its activities, however characterized, are sufficient to impose liability on the government as an owner, [or] operator...." 29 F.3d at 842. The HSCA imposes liability, as an owner or operator, on any person who controls activities at a site at the relevant times; it makes no exceptions for regulatory activities.

Accordingly, the Commonwealth's preliminary objections are overruled.

### ORDER

AND NOW, this 4 th day of November 1999, the Commonwealth's preliminary objections are overruled. Respondents shall file an answer to the amended complaint no later than 30 days after entry of this order.

**10.** Section 507(a) states, in pertinent part, "The department, a Commonwealth agency, or a municipality which undertakes to abate a public nuisance under this act or take a response action may recover those response costs and natural resource damages in an action in equity brought before a court of competent jurisdiction." 35 P.S. § 6020.507(a).