**[J-47-2024] [MO: Brobson, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | |
|---|---|
| JASON WINIG, | : No. 32 EAP 2023 |
| | : |
| Appellant | : Appeal from the Order of the |
| | : Commonwealth Court entered on |
| | : February 24, 2023, at No. 1423 CD |
| v. | : 2021, affirming the Order of the |
| | : Court of Common Pleas of |
| | : Philadelphia County, Civil Division, |
| THE OFFICE OF THE DISTRICT | : entered on June 21, 2021, at No. |
| ATTORNEY OF PHILADELPHIA, | : 200600251. |
| LAWRENCE S. KRASNER, ESQUIRE, | : |
| BRANWEN MCNABB, ESQUIRE, | : ARGUED: September 10, 2024 |
| MICHELLE MICHELSON, ESQUIRE, | : |
| WILLIAM BURROWS, ESQUIRE AND | : |
| HELEN PARK, ESQUIRE, | : |
| | : |
| Appellees | : |

**DISSENTING OPINION**

**JUSTICE DOUGHERTY**          **DECIDED: November 19, 2025**

I agree with my learned colleagues in dissent that the majority's interpretation of Section 5725 of the Wiretapping and Electronic Surveillance Control Act (the Wiretap Act or Act), which authorizes a civil cause of action against "any person" who violates the Act, 18 Pa.C.S. §5725(a), leads to "an absurd result." Dissenting Opinion at 3 (Mundy, J.); *see also* Dissenting Opinion at 9 (McCaffery, J.). In subsection (b) of the statute, the General Assembly explicitly waived immunity on behalf of "the Commonwealth and any of its officers, officials or employees[.]" 18 Pa.C.S. §5725(b). Despite this clear waiver of immunity, the majority's analysis renders the Commonwealth and many public officials immune under the Act. Because this is the exact opposite of what the General Assembly intended, I respectfully dissent.

Multiple forms of immunity, emanating from various legal sources, are alive and well in this Commonwealth. Some protect entities. Others, persons. A few shield both. As a baseline, the Pennsylvania Constitution provides that "[s]uits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." PA. CONST. art. I, §11. The General Assembly, in turn, has "declared [it] to be [its] intent" "that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa.C.S. §2310. Thus, the Commonwealth government, as the sovereign, is immune from suit, as are its "officials and employees acting within the scope of their duties." *Id.* But there's an important qualification to this default rule: "unless otherwise specifically authorized by statute." *Id.*

The most well-known statute of this kind is Section 8522 of the Sovereign Immunity Act, 42 Pa.C.S. §8522. It provides ten specific instances in which the General Assembly has "waive[d] . . . sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act[.]" 42 Pa.C.S. §8522(a); *see id.* at §8522(b) (listing ten "acts by a Commonwealth party" for which "the defense of sovereign immunity shall not be raised to claims for damages"); 42 Pa.C.S. §8501 (defining a "Commonwealth party" as "[a] Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment"). Other specific statutory exceptions to sovereign immunity are found in the Commonwealth Procurement

Code, *see* 62 Pa.C.S. §1702(b),[1] and, of course, in the Wiretap Act, *see* 18 Pa.C.S. §5725(b).[2]

Local agencies, on the other hand, are not considered part of the Commonwealth government and so do not enjoy sovereign immunity. *See* 42 Pa.C.S. §8501 (defining a "[l]ocal agency" as "[a] government unit other than the Commonwealth government"). Nevertheless, the General Assembly, through the Political Subdivision Tort Claims Act, has granted local agencies statutory "governmental immunity" for "any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. §8541.[3] In the same way it did in the Sovereign Immunity Act, however, the General Assembly partially waived that immunity by delineating nine "acts by a local agency or any of its employees [that] may result in the

---

[1] "The General Assembly under section 11 of Article I of the Constitution of Pennsylvania does hereby waive sovereign immunity as a bar to claims against Commonwealth agencies brought in accordance with sections 1711.1 (relating to protests of solicitations or awards) and 1712.1 (relating to contract controversies) and Subchapter C (relating to Board of Claims) but only to the extent set forth in this chapter." 62 Pa.C.S. §1702(b) (footnote omitted).

[2] "To the extent that the Commonwealth and any of its officers, officials or employees would be shielded from liability under this section by the doctrine of sovereign immunity, such immunity is hereby waived for the purposes of this section." 18 Pa.C.S. §5725(b).

[3] Likewise, the General Assembly has limited exposure to civil liability for local agency employees: "An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter." 42 Pa.C.S. §8545; *see also id.* at §8546 ("In any action brought against an employee of a local agency for damages on account of an injury to a person or property based upon claims arising from, or reasonably related to, the office or the performance of the duties of the employee, the employee may assert on his own behalf, or the local agency may assert on his behalf: (1) Defenses which are available at common law to the employee. (2) The defense that the conduct of the employee which gave rise to the claim was authorized or required by law, or that he in good faith reasonably believed the conduct was authorized or required by law. (3) The defense that the act of the employee which gave rise to the claim was within the policymaking discretion granted to the employee by law. . . .").

imposition of liability on a local agency[.]" 42 Pa.C.S. §8542(b); *see id.* at §8542(a) (declaring "[a] local agency shall be liable for damages on account of an injury to a person or property" where "[t]he injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b)").

Beyond statutory immunities, there are also immunities grounded in the common law. Most relevant for present purposes is "'official immunity' — a status which pertains to government officials and employees." *Freach v. Commonwealth*, 370 A.2d 1163, 1168 (Pa. 1977). "The doctrine of official immunity in Pennsylvania is twofold: So-called 'high public officials' have been held to enjoy an absolute immunity from suits arising out of the performance of their duties. Other public officers and employes are protected by a more limited form of immunity." *Id.* (internal citations omitted). "The standard used to determine who qualifies as a 'high public official' was set forth by this Court in" *Montgomery v. City of Philadelphia*, 140 A.2d 100 (Pa. 1958), where "we explained that the 'determination of whether a particular public officer is protected by absolute privilege should depend on the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." *Lindner v. Mollan*, 677 A.2d 1194, 1198 (Pa. 1996)*, quoting Montgomery*, 140 A.2d at 105. Meanwhile, the Court in *DuBree v. Commonwealth*, 393 A.2d 293 (Pa. 1978), "articulated a standard to determine which officials qualif[y] for official immunity where those officials [a]re not considered high public officials entitled to absolute privilege under the common law" and "held that immunity was not absolute but qualified and its availability depended on the circumstances of each case." *Lindner*, 677 A.2d at 1198.

Aside from "high public officials," who enjoy absolute immunity, and "lower public officials," who are "granted a conditional or qualified immunity[,]" there are also "mere

public employees to whom no [official] immunity flows." *Reese v. Danforth*, 406 A.2d 735, 737 (Pa. 1979); *see id.* ("In order to be [a] public officer[]," one must "occupy public office[.]"), *citing Commonwealth ex rel McCreary v. Major*, 22 A.2d 686, 688 (Pa. 1941) ("To constitute a public office, it is essential that certain independent public duties, a part of the sovereignty of the State, should be appointed to it by law, to be exercised by the incumbent in virtue of his election or appointment to the office thus created and defined[.]"); *see also id.* at 738 ("Although individuals may occupy positions which are publicly-funded and authorized by statute, . . . this does not compel the conclusion that they are public officers. Instead, it is the nature of the office, the powers wielded, and the responsibilities carried out that are the key considerations."). Importantly, the common law "privilege of immunity has consistently been upheld and was specifically found not to have been abrogated by the legislature." *Doe v. Franklin Cty.*, 174 A.3d 593, 603 (Pa. 2017) (citations omitted).[4]

Turning back to this case, the majority's bottom line is that even though the General Assembly explicitly waived sovereign immunity in Section 5725(b) of the Wiretap Act, because it did not also explicitly mention high public official immunity (or any other forms of immunity, regardless of their source), that means high public official immunity (and

---

[4] Indeed, as the majority observes, both "the Sovereign Immunity Act and the Political Subdivision Tort Claims Act include various immunities and defenses, some of which resemble high public official immunity[.]" Majority Opinion at 25-26 and n.15, *citing* 42 Pa.C.S. §8524(1) ("An official of a Commonwealth agency . . . may assert on his own behalf, or the Commonwealth may assert on his behalf, defenses which have heretofore been available to such officials."); 42 Pa.C.S. §8546(1) ("In any action brought against an employee of a local agency for damages on account of an injury to a person or property based upon claims arising from, or reasonably related to, the office or the performance of the duties of the employee, the employee may assert on his own behalf, or the local agency may assert on his behalf: (1) Defenses which are available at common law to the employee."); *see also* 1 Pa.C.S. §2310 (declaring "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity **and official immunity** and remain immune from suit except as the General Assembly shall specifically waive the immunity") (emphasis added).

every other recognized type) necessarily has not been waived. *See* Majority Opinion at 16 (concluding the General Assembly only "chose to head off the affirmative defense of sovereign immunity" in Section 5725(b) and that "all others" remain "available to those entitled to assert" them). Stated differently, the majority concludes the General Assembly's silence with respect to all immunities except sovereign was an intentional legislative choice. But to what end?

The majority's theory only holds water if the General Assembly had some reason for waiving sovereign immunity to the exclusion of all others. *See* 1 Pa.C.S. §1921(c)(1)-(4) ("When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:" the "occasion and necessity for the statute"; the "circumstances under which it was enacted"; the "mischief to be remedied"; and the "object to be attained.").[5] The problem is that none is apparent. To

---

[5] No one disputes that Section 5725(b) clearly and unambiguously waives sovereign immunity. However, as detailed below, I believe the peculiar phrase "the Commonwealth and any of its officers, officials or employees," when considered against subsection (a)'s authorization of a cause of action against "any person," creates a facial ambiguity. 18 Pa.C.S. §5725. As such, we must engage in statutory construction to resolve the precise issue before us: whether the General Assembly, in enacting the Wiretap Act, intended to "specifically waive" official immunity, in addition to sovereign immunity. 1 Pa.C.S. §2310. The majority asserts I undermine my own position "[b]y leaning into ambiguity," because our precedent supposedly "does not support an analysis that would allow this Court to interpret an ambiguous statute as a clear and express waiver of high public official immunity." Majority Opinion at 28. This assertion is indefensible. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. §1921(a). While it is true "that the **best** indication of legislative intent [to waive immunity] is the plain language of the statute[,]" *Doe*, 174 A.3d at 605 (emphasis added), we have never held the plain language of a statute is the **only** way to discern intent. The reality is that we have never confronted an immunity statute like the one before us. But other courts, most notably the United States Supreme Court, which likewise requires an unmistakable statutory expression of legislative intent to waive immunity, have recognized that the sovereign immunity canon is merely another "tool for interpreting the law and that it does not displace the other traditional tools of statutory construction." *F.A.A. v. Cooper*, 566 U.S. 284, 291 (2012) (internal quotation marks, brackets, and citation omitted). What the high Court therefore "require[s] is that the scope of Congress' waiver be clearly discernable from the statutory text **in light of traditional** (continued…)

restate, the majority believes the General Assembly authorized a civil cause of action against any person, and then went out of its way to waive sovereign immunity against "the Commonwealth and any of its officers, officials or employees[,]" 18 Pa.C.S. §5725(b), while simultaneously (through its silence) allowing any individual who enjoys official immunity to escape liability for violations of the Act. *See* Majority Opinion at 16 ("Clearly, the General Assembly felt the waiver was necessary to prevent *certain* persons sued under Section 5725(a) — the Commonwealth and its officers, officials, and employees — from raising a *particular* affirmative defense.") (emphasis in original). But if that's true, and the General Assembly intended to expose only certain government actors to liability — *i.e.*, those protected by sovereign but no other type of immunity — who exactly are those individuals? If it's not high public officials, that leaves only some lower-level officials and mere public employees of the Commonwealth. *See Reese*, 406 at 737. As it stands, you need a Venn diagram to figure out who is subject to liability under the majority's interpretation of the Act.

More importantly, the majority wholly fails to explain **why** the General Assembly would have wanted to expose low-level and mere employees of the Commonwealth — but no other government actors, not even mere public employees' counterparts in local

---

**interpretive tools**." *Id.* (emphasis added). Only when the use of traditional interpretative tools fails to resolve the ambiguity do "we take the interpretation most favorable to the Government." *Id.*; *see Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 388 (2023) ("The clear-statement question is simply whether, upon applying 'traditional' tools of statutory interpretation, Congress's abrogation of . . . immunity is 'clearly discernable' from the statute itself."). Why should this Court's practice be any different? In essence, the majority requires the General Assembly "to use magic words" to effectively waive immunity. *Id.* Until now, our courts, like the high Court, have properly refrained from judicially imposing such a rigid requirement. *See, e.g., Dresser Indus., Inc. v. Dep't of Env't Res.*, 604 A.2d 1177, 1182 (Pa. Cmwlth. 1992) ("We certainly recognize this established principle [that immunity must be specifically waived by the General Assembly], but such waiver is not confined to the specific words 'immunity is waived[.]'"); *Coughlin*, 599 U.S. at 388 ("The rule is not a magic-words requirement[.]").

agencies — to liability under the Act. *See* 1 Pa.C.S. §1921(c)(6) (the "consequences of a particular interpretation" are a proper consideration when determining legislative intent). This highlights the trouble with the majority's interpretation. *See generally Lindner*, 677 A.2d at 1196 ("If this Court were to adopt [Lindner]'s argument, an irrational disparity would be produced in the immunities for Commonwealth and local agency employees. For example, high public officials who happen to receive their salary from the Commonwealth — such as the Governor — would be permitted to raise the defense of absolute immunity whereas high public officials who happen to receive their salary from a municipality — such as a Mayor — would not be permitted to raise the defense.").

What's more, the majority's analysis effectively precludes a cause of action against the Commonwealth itself. It does so by summarily holding a district attorney's office "does not qualify as a 'person' subject to suit under Section 5725(a) of the Wiretap Act." Majority Opinion at 15 n.11; *see* 18 Pa.C.S. §5702 (defining "person" as "[a]ny employee, or agent of the United States or any state or political subdivision thereof, and any individual, partnership, association, joint stock company, trust or corporation"). If that's true, then what about "the Commonwealth"?[6] It doesn't fit neatly within the statutory definition any

---

[6] To be clear, although it acts in the name of "the Commonwealth," a county "DA Office is a local agency." *Pennsylvanians for Union Reform v. Centre Cty. Dist. Atty's Off.*, 139 A.3d 354, 356 (Pa. Cmwlth. 2016); *see Pettit v. Namie*, 931 A.2d 790, 798 (Pa. Cmwlth. 2007) (a "District Attorney is a county officer" and "a county is a local agency to which governmental immunity . . . applies"); *see also Duggan v. 807 Liberty Ave., Inc.*, 288 A.2d 750, 753 (Pa. 1972) ("the office of district attorney is actually something of a hybrid; denominated a county office holder by the Constitution, the district attorney performs his duties on behalf of the Commonwealth"). Regardless, as explained by the majority, the prosecutorial parties before us "did not raise governmental immunity in their preliminary objections to Winig's amended complaint." Majority Opinion at 5 n.4. Accordingly, governmental immunity is not at issue here. Parenthetically, it is also worth noting that, although the prosecutorial parties did raise official immunity in their preliminary objections, "immunity from suit is an affirmative defense which should be pleaded under the heading 'New Matter' in a responsive pleading; it is not properly raised by preliminary objections." *Freach*, 370 A.2d at 1166 n.6, *citing* Pa.R.Civ.P. 1030.

more than a district attorney's office does, so I must assume the majority believes the Commonwealth is not subject to liability under the Act either. That conclusion, however, cannot be correct. After all, the General Assembly unequivocally declared it was waiving immunity for "**the Commonwealth and** any of its officers, officials or employees[.]" 18 Pa.C.S. §5725(b) (emphasis added). It did not waive immunity only for "Commonwealth officers, officials or employees."

So, where in its analysis did the majority go so far astray? How did it manage to rewrite a broad, explicit waiver of immunity for "the Commonwealth and any of its officers, officials or employees" into a narrow one leaving only mere public employees and some undefined group of lower-level officers of the Commonwealth (those who do not receive qualified immunity) on the hook for violations of the Wiretap Act?

To begin, the majority disregards our precedent relating to the General Assembly's use in statutes of all-encompassing phrases like "any person." Take *Freach*. It involved survival and wrongful death actions brought against, *inter alia*, a district attorney and an assistant district attorney. The Commonwealth Court held the prosecutors "were 'high public officials' and thus cloaked with absolute immunity." *Freach*, 370 A.2d at 1168. We reversed, explaining this was "a question we need not decide, for we have concluded that Section 603 of the Mental Health and [Intellectual Disability] Act of 1966, 50 P.S. §4603, . . . supersedes the common law doctrine of official immunity in cases in which the allegedly wrongful acts are done pursuant to that statute." *Id.* That statute provides "[n]o person . . . shall be held civilly . . . liable for any diagnosis, opinion, report or any thing done pursuant to the provisions of this act if he acted in good faith and not falsely, corruptly, maliciously, or without reasonable cause[.]" 50 P.S. §4603. Interpreting this language, we determined "the phrase 'no person' is broad enough to include all officials of the Commonwealth and its governmental components whether 'high' or otherwise, as

well as private persons." *Freach*, 370 A.2d at 1168; *see id.* ("the use of the phrase 'no person' evidences an intent on the part of the legislature that the limited immunity granted by Section 603 will apply to all Commonwealth and governmental officials and will supersede common law officials['] immunity"). We reasoned: "Although this language appears to grant or create, rather than to deny or waive, immunity from suits, its clear negative implication is that **any person** acting pursuant to the provisions of the act may be held liable for conduct which is lacking in good faith or is false, corrupt, malicious, or without reasonable cause." *Id.* (emphasis added). In this way, we explained, "Section 603 creates a limited immunity — an immunity which is expressly inapplicable to several enumerated types of conduct." *Id.*[7]

Of course, in the Wiretap Act, the General Assembly stated explicitly that which we inferred by negative implication in *Freach*, by providing that "[a]ny person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter **shall** have a civil cause of action against **any person** who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication; and shall be entitled to recover from **any such person**[.]" 18 Pa.C.S. §5725(a) (emphasis

---

[7] As the majority relates, "on July 14, 1978, this Court issued its decision in *Mayle v. Pennsylvania Department of Highways*, 388 A.2d 709 (Pa. 1978), abolishing the common law defense of sovereign immunity. By the Act of September 28, 1978, P.L. 788 (Act 152), the General Assembly enacted . . . 1 Pa.C.S. §2310, which, *inter alia*, revived sovereign immunity." Majority Opinion at 13. "Then, on October 4, 1978, one week after the effective date of Act 152, the same General Assembly enacted the Wiretap Act, including the 'waiver of sovereign immunity' provision." Dissenting Opinion at 3 (Mundy, J.). The next day, this Court issued two decisions that are relevant here. In *Rhines v. Herzel*, 392 A.2d 298 (Pa. 1978), we acknowledged "that *Freach* was decided prior to the abrogation of [common law] sovereign immunity" in *Mayle* and the enactment of statutory sovereign immunity in Act 152. *Id.* at 301 n.5. Still, in the other case we decided that same day, we "reaffirm[ed]" *Freach*'s central holding "that the limited immunities provided by section 603 applied to all Commonwealth and governmental officials and superseded common law official immunity in instances where the section applies." *Heifetz v. Philadelphia State Hosp.*, 393 A.2d 1160, 1162 (Pa. 1978).

added).  The phrase "any person" in the Act is merely the affirmative, mirror image of the phrase "no person" used in 50 P.S. §4603.  This suggests it could be "broad enough to include all officials of the Commonwealth and its governmental components whether 'high' or otherwise, as well as private persons."  *Freach*, 370 A.2d at 1168.[8]

In addition to ignoring our relevant decisional law, the majority errs in applying the definitional section of the Wiretap Act over the clear text of Section 5725(a).  Although the Act provides statutory definitions for the terms "aggrieved person" and "person," *see* 18 Pa.C.S. §5702,[9] it does not provide a definition for the specialized phrase "any person."  The difference is subtle but critical.  Had the General Assembly intended to invoke the statutory definition of "person" in Section 5725(a), it would have simply said "**a** person."  But it didn't.  Instead, it declared that "**[a]ny** person" (not just an "**aggrieved** person") "shall have a civil cause of action against **any** person" (not "**a** person") "who intercepts, discloses or uses or procures **any other person**" (not "**another** person") "to intercept, disclose or use, such communication; and shall be entitled to recover from **any such person**" (not "such **a** person").  18 Pa.C.S. §5725(a) (emphasis added).  Because the

---

[8] According to the majority, "when the General Assembly creates a broadly sweeping cause of action, as it did in the Wiretap Act, against 'any person' who violates the Act, the creation of the action, in and of itself, is insufficient to constitute a waiver of all immunity defenses that some persons may be able to assert as affirmative defenses."  Majority Opinion at 32.  I do not contend otherwise.  As I emphasize throughout this opinion, it is the Wiretap Act's *sui generis* authorization of a civil cause of action against "any person" **combined with** the unique waiver of immunity for "the Commonwealth and any of its officers, officials or employees" that undergirds my interpretation.  I do not argue *Freach* alone is dispositive, but the majority is wrong to suggest it "simply has no applicability" here.  *Id.* at 31.  *Freach*'s interpretation of the phrase "no person" is relevant to our interpretation of the antonymous phrase "any person" in the Wiretap Act.

[9] An "[a]ggrieved person" under the Act is "[a] person who was a party to any intercepted wire, electronic or oral communication or a person against whom the interception was directed."  18 Pa.C.S. §5702.  "Person," once more, is defined as "[a]ny employee, or agent of the United States or any state or political subdivision thereof, and any individual, partnership, association, joint stock company, trust or corporation."  *Id.*

General Assembly repeatedly opted to use a specialized phrase in Section 5725(a) rather than simply invoke the statutorily defined terms "aggrieved person" or "person," we are not bound by those definitions. *See* 1 Pa.C.S. §1903(a) ("technical words and phrases and such others as have acquired a peculiar and appropriate meaning . . . shall be construed according to such peculiar and appropriate meaning or definition"); *id.* at §1903(b) ("General words shall be construed to take their meanings . . . by preceding particular words."); *Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1033-34 (Pa. 2018) (holding the Commonwealth was a "person in interest" under Section 4.1 of the Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. §201-4.1, even though the UTPCPL's definition of "person" covers only "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities[,]" 73 P.S. §201-2; "If the General Assembly intended to restrict eligibility for a remedy under section 4.1 to those encompassed by 'person' as defined in section 2(2), it could have employed that term. Instead, it defined the class of eligible recipients as any 'person in interest.'").

In any event, the majority misses the important caveat the General Assembly built into the definitional section of the Wiretap Act, which instructs that "the following words and phrases shall have the meanings given to them in this section **unless the context clearly indicates otherwise**[.]" 18 Pa.C.S. §5702 (emphasis added). This is one of those situations. That is, the context of Section 5725 clearly indicates the definition of "any person" includes "the Commonwealth" (and a district attorney's office) irrespective of how Section 5702 defines "person." Otherwise, the General Assembly would have had no need to waive immunity on behalf of "the Commonwealth" in the first place. Likewise, if the General Assembly wanted to incorporate the statutory definition of "person" in Section 5725(a), it would not have used the word "any" in the statute. The definition of

"person" already includes that very modifier, *see* 18 Pa.C.S. §5702 (defining "[p]erson" as "**[a]ny** employee, or agent of the United States or **any** state or political subdivision thereof, and **any** individual, partnership, association, joint stock company, trust or corporation") (emphasis added), rendering the word "any" in Section 5725(a) redundant. Put another way, reading the statutory definition of "person" into Section 5725(a) creates surplusage in Section 5725(a), in the form of an extra, unnecessary "any." *See Golden Gate*, 194 A.3d at 1034 ("When interpreting a statute, courts must presume that the legislature did not intend any statutory language to exist as mere surplusage[.]").

The majority similarly errs in its interpretation of subsection (b) of the statute. Recall that the General Assembly has generally declared that "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity[.]" 1 Pa.C.S. §2310. By statute, then, sovereign immunity protects (1) the Commonwealth, (2) its officials, and (3) its employees (assuming the latter two groups are acting "within the scope of their duties"). Yet, in Section 5725(b), the General Assembly swept more broadly by waiving immunity for "the Commonwealth and any of its **officers**, officials or employees[.]" 18 Pa.C.S. §5725(b) (emphasis added).[10] This phrasing, and the inclusion of an additional category of persons not found in Section 2310, is further proof of the General Assembly's clear intent to waive more than just sovereign immunity for a vague subset of low-level Commonwealth officials and mere employees of the Commonwealth. *See Golden Gate*, 194 A.3d at 1034 ("courts must construe a statute so as to give effect to every word"); *HTR Restaurants, Inc. v. Erie Ins. Exch.*, 307 A.3d

---

[10] As far as statutory waivers of sovereign immunity go, Section 5725(b) appears to stand alone in this regard. *Compare* 18 Pa.C.S. §5725(b) (waiving sovereign immunity for "**the Commonwealth and any of its officers, officials or employees**") (emphasis added) *with* 42 Pa.C.S. §8522(a) (waiving sovereign immunity "against **Commonwealth parties**") (emphasis added) *and* 62 Pa.C.S. §1702(b) (waiving sovereign immunity "against **Commonwealth agencies**") (emphasis added).

49, 67 n.62 (Pa. 2023) ("[w]hen the legislature uses two different words, we must . . . presume that it must have meant for the words to have separate meanings.") (internal quotations and citation omitted); *see also* Dissenting Opinion at 7 (McCaffery, J.) ("Why else would the General Assembly have referenced 'officers, officials or employees' if it meant to limit its waiver of immunity to the sovereign?"). Indeed, this different, more expansive phrasing than appears in the traditional, statutory conception of sovereign immunity as embodied in 1 Pa.C.S. §2310, must carry legal significance. To me, the answer seems obvious: the General Assembly intentionally added the word "officers" precisely because it wanted to waive another type of immunity altogether, one that we have long described as applying to "public **officers**." *Freach*, 370 A.2d at 1168 (emphasis added); *Reese*, 406 A.2d at 737 (emphasis added).[11] That immunity, of course, is official immunity.[12]

All of this cuts directly against the majority's conclusion the General Assembly has not employed clear "language waiving high public official immunity for purposes of Section 5725(a) of the Wiretap Act." Majority Opinion at 22. In my respectful view, the statute does specifically and explicitly waive official immunity. Subsection (a) explicitly authorizes a civil cause of action against "any person," 18 Pa.C.S. §5725(a), a phrase so broad we

---

[11] The majority refuses to seriously engage with this text, conceding only that "it is not at all clear that the General Assembly intended 'the Commonwealth's officers' in the Wiretap Act to include county district attorneys and assistant district attorneys." Majority Opinion at 31. Thus, explains the majority, it instead chooses to "focus" on "the words 'sovereign immunity' and 'such[.]'" *Id.* at 28. Respectfully, to repeat, no one disputes that the statute waives sovereign immunity. The question is whether it waives more than that. To resolve that issue, we must look to the rest of the statute, including the phrase "any person" and the word "officers." *See* 1 Pa.C.S. §1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions.").

[12] I thus differ slightly from Justice McCaffery on this point. He argues "Section 5725(b) specifically and unequivocally includes reference to high public officials without using the actual term itself." Dissenting Opinion at 7 (McCaffery, J.). I believe the statute does use the actual term itself, through the word "officers."

have held it can, in some circumstances, "include all officials of the Commonwealth and its governmental components whether 'high' or otherwise, as well as private persons." *Freach*, 370 A.2d at 1168. And subsection (b), in contrast to every other statutory waiver of immunity in this Commonwealth, goes on to specifically waive immunity on behalf of "the Commonwealth and any of its officers, officials or employees[.]" 18 Pa.C.S. §5725(b). Taken together, these dual, unique features of the Wiretap Act's immunity provision are enough to satisfy our "well-established principles requiring that exceptions to immunity be specifically provided and strictly construed[.]" *Doe*, 174 A.3d at 605. Plus, reading the statute as waiving both sovereign and official immunity is more consistent with the Act's purpose, which, in part, "emphasizes the protection of privacy," *Commonwealth v. Spangler*, 809 A.2d 234, 237 (Pa. 2002), as well as the reality that government actors are just as (if not more) likely to be in a position to thwart that purpose by violating the Act in some way. *See* Dissenting Opinion at 8-9 (McCaffery, J.) (detailing "the extensive procedures that must take place in order for an individual to obtain an authorized, legal interception" under the Act, which "are limited exclusively to the law enforcement community"); Winig's Brief at 30 (noting 18 Pa.C.S. §5713(b) "expressly contemplates the filing of civil suits for damages against law enforcement officers under §5725 for intentional violations of §5713(a)"); *see also* 18 Pa.C.S. §5713.1(c) ("A good faith reliance on the provisions of this section shall be a complete defense to any civil or criminal action . . . against any law enforcement officer or agency[.]"); 18 Pa.C.S. §5726(a) (authorizing an aggrieved person to bring an additional action against "any investigative or law enforcement officer, public official or public employee," in the form of removal from office or employment, if "the officer, official or employee has intentionally violated the provisions of this chapter").

For these reasons, I respectfully dissent. However, while I share in my dissenting colleagues' belief that the majority misinterprets the Wiretap Act, I am unable to join their thoughtful opinions. Most notably, I find it unnecessary to determine whether "the intent of the legislature was to waive **all** forms of immunity[.]" Dissenting Opinion at 3 (Mundy, J.) (emphasis added); *see id.* at 4 ("it is clear that the General Assembly was referring to sovereign immunity in the common law context, which would include governmental immunity, official immunity, high public official immunity, and prosecutorial immunity"); *see also* Dissenting Opinion at 11 (McCaffery, J.) (agreeing with Justice Mundy's analysis). Only official immunity is at issue in this appeal. *See* Majority Opinion at 5 n.4 ("a close reading of the Commonwealth Court's opinion reveals that the court decided this matter solely on the basis of high public official immunity"). As explained above, based on its unique structure, including its use of the capacious phrase "any person" and its inclusion of the specific word "officers," Section 5725 of the Wiretap Act clearly and unequivocally waives official, in addition to sovereign, immunity. There is no need to decide any more than that. Consequently, I would reverse the Commonwealth Court's holding that Winig's civil cause of action against the prosecutorial parties under Section 5725(a) is barred by high public official immunity, and remand for that court to address the outstanding issue of prosecutorial immunity in the first instance.